# In the United States Court of Federal Claims

No. 11-377C
(Filed: July 31, 2014)

|  |  |  |
|---|---|---|
| RALPH J. LAMSON,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | 28 U.S.C. § 1498(a); 35 U.S.C. § 287(c) – Medical Immunity Provision; Defense to Liability |

*Bruce Burdick*, Alton, IL, for plaintiff.

*Gary Hausken*, United States Department of Justice, Civil Division, Washington, DC, with whom were *John Fargo*, Director, and *Stuart F. Delery*, Assistant Attorney General, for defendant.

**O P I N I O N**

**Firestone**, *Judge*.

Pending before the court is the United States' ("the government") motion for summary judgment under Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC") in this action brought by plaintiff Dr. Ralph J. Lamson ("Dr. Lamson") under 28 U.S.C. § 1498(a). This is a case of first impression in which the court must determine whether the medical immunity provision of 35 U.S.C. § 287(c) applies to the United States. Dr. Lamson alleges that the United States is liable under § 1498(a) for

unauthorized use of his patent both directly and through procurement contracts. Dr. Lamson's patent, U.S. Patent No. 6,425,764 ("the '764 patent"), covers several methods for using Virtual Reality Immersion Therapy ("VRIT") to treat psychological, psychiatric, and medical conditions, including post-traumatic stress disorders in military personnel. Dr. Lamson alleges that the United States has practiced one or more of these methods without a valid license.[1]

The government has moved for summary judgment, arguing that because the activities allegedly giving rise to his § 1498(a) claim occurred during medical treatment by or under the direction of licensed medical practitioners at medical treatment facilities operated by the United States, the government has a complete defense to liability under 35 U.S.C. § 287(c). By its terms, § 287(c) protects medical practitioners and those practicing under their supervision—as well as any related health entity—from liability for infringement in connection with the performance of a "medical activity" covered by the patent. The government argues that it can avail itself of the defense to liability established in § 287(c) in an action brought against the United States under § 1498(a). According to the government, this defense covers plaintiff's claims regarding the use of VRIT methods to treat identified psychological, psychiatric, or medical conditions, as well as preventative treatments such as habituating or desensitizing soldiers prior to

---

[1] On October 27, 2011, the court ordered the dismissal of Count 2 of plaintiff's complaint, which alleged a Fifth Amendment takings of the '764 patent, on the grounds that such a takings claim was barred for lack of jurisdiction. Lamson v. United States, 101 Fed. Cl. 280, 282 (2011). In this motion, the government seeks judgment on Count 1, which alleges an unauthorized use of his patent under § 1498(a), the sole remaining count of the complaint.

deployment as a preventative measure to the extent that desensitizing or habituating soldiers is considered medical treatment.  In the alternative, the government argues that these preventative techniques, as well as other non-treatment-related uses of VRIT, are outside the scope of the '764 patent and thus are not covered by the patent.

Plaintiff does not challenge the government's contention that the unauthorized uses alleged in the complaint, if true, would fall within the factual predicate covered by § 287(c).  Rather, plaintiff contends that summary judgment must be denied because § 287(c) does not apply to suits against the United States under § 1498(a).  Plaintiff argues that § 287(c) by its express terms applies only as a defense against infringement under Title 35.  Because the United States is not subject to suit for patent infringement under Title 35, but instead is liable only under § 1498(a) for unauthorized use, plaintiff argues that the United States cannot avail itself of the defense and therefore may be held liable for medical uses of patented methods.  The plaintiff also argues that the government's use of VRIT techniques to desensitize or habituate soldiers falls within the "treatment" methods as set forth in the '764 patent and thus is also covered by the patent.[2]

For the reasons discussed below, the court holds that the defense provided for in § 287(c) is available to the United States in actions brought under § 1498(a).  As a result, the government is entitled to summary judgment on plaintiff's claims for unauthorized

---

[2] The parties' arguments regarding use of the patent method for non-treatment uses, such as habituating and desensitizing soldiers, developing combat simulators, and other uses, has evolved over the course of briefing.  At this stage, the government contends that these uses are outside the scope of the patent, and plaintiff claims that the uses all involve "treatment" and are therefore covered by the patent.  Earlier arguments regarding whether "research" into the use of VRIT by the government involved "use" of the patent have been abandoned by the parties.

3

use of the '764 patent in connection with "medical treatment" at various government and medical facilities. The Federal Circuit has made it clear that the United States may avail itself of all defenses available to private parties in infringement litigation when the United States is defending actions under § 1498(a), and it is equally clear that § 287(c) is such a defense. In addition, the government is entitled to summary judgment with regard to plaintiff's allegation of unauthorized use in connection with use of VRIT outside of medical treatment of human patients. The court agrees with the government that the '764 patent encompasses only a method for evaluating and/or treating persons with medical or psychological conditions and thus using VRIT techniques for non-medical purposes does not amount to "use" of plaintiff's patent.

I.  **Factual Background**[3]

The '764 patent was issued to Dr. Lamson on July 30, 2002. The patent is entitled "Virtual Reality Immersion Therapy for Treating Psychological, Psychiatric, Medical, Educational and Self-Help Problems" and claims methods to evaluate and treat "a psychological, psychiatric, or medical condition in a human patient" using "an interactive virtual reality environment." Appendix at 1. It is not disputed that the primary claims of the patent are claims 1, 19, 23, and 26. All other claims in the patent are derived therefrom. Claim 1 covers

> A method for treating a psychological, psychiatric, or medical condition in a human being, comprising:

---

[3] The facts are taken from the parties' pleadings and are undisputed unless noted.

    (a) choosing a psychological strategy for treating said psychological, psychiatric, or medical condition;
    (b) providing an interactive virtual reality environment;
        (1) said interactive virtual reality environment comprising a technology unit arranged to display to said human patient a plurality of virtual reality environments;
        (2) said technology unit having an input for receiving feedback responses to said interactive virtual reality environment from said human patient;
        (3) said technology unit arranged to change said virtual reality environment in response to said feedback responses from said human patient;
    (c) selecting said virtual reality environment to correspond to said psychological strategy;
    (d) encoding electronic instructions for said interactive virtual reality environment;
    (e) loading said electronic into said virtual reality technology unit; and
    (f) instructing said human patient how and when to use said virtual reality technology unit so as to experience said interactive virtual reality environment and how and when to provide feedback responses to said technology unit for changing said virtual reality environment so as to treat said psychological, psychiatric, or medical condition.

App. to Def.'s Mot. Summ. J. 25, ECF No. 37-1 ("Appendix"). Claim 19 covers

> A method of treating a psychological, psychiatric, or medical condition in a human being comprising:
>
> (a) providing a plurality of sets of counseling directions for treating said psychological, psychiatric, or medical condition;
> (b) choosing one of said sets of counseling directions for treating said psychological, psychiatric, or medical condition of said human patient;
> (c) providing a virtual reality technology unit arranged to provide an interactive virtual reality environment;
>     (1) said virtual reality technology unit being equipped with a display means;
>     (2) said virtual reality technology unit also being equipped with an input means for receiving responses to said interactive virtual reality environment from said human patient;
> (d) providing a set of encoded electronic instructions for said virtual reality environment;
> (e) embedding said one set of counseling directions in said set of encoded electronic instructions for said interactive virtual reality environment;

> (f) loading said electronic into said virtual reality technology unit for displaying said interactive virtual reality environment; and
> (g) instructing said human patient how and when to use said virtual reality technology unit to display said interactive virtual reality environment and how to provide responses to said virtual reality environment.

Id. at 26.  Claim 23 covers

> A method for treating a psychological, psychiatric, or medical condition in a human being comprising:
>
> (a) providing a plurality of sets of counseling directions for treating said psychological, psychiatric, or medical condition;
> (b) choosing one of said sets of counseling directions for treating said psychological, psychiatric, or medical condition of said human patient;
> (c) providing a virtual reality technology unit arranged to provide an interactive virtual reality environment;
>   (1) said virtual reality technology unit being equipped with a display means;
>   (2) said virtual reality technology unit also being equipped with an input means for receiving responses to said interactive virtual reality environment from said human patient;
> (d) providing a set of encoded electronic instructions for said virtual reality environment;
> (e) embedding said one set of counseling directions in said set of encoded electronic instructions for said interactive virtual reality environment;
> (f) loading said electronic into said virtual reality technology unit for displaying said interactive virtual reality environment; and
> (g) instructing said human patient how and when to use said virtual reality technology unit to display said interactive virtual reality environment and how to provide responses to said virtual reality environment.

Id.  Claim 26 covers

> A method for evaluating a psychological, psychiatric, or medical condition in a human being, comprising:
>
> (a) providing a virtual reality technology unit;
> (b) said virtual reality technology unit being equipped with the following:
>   (1) a display means for displaying a virtual reality environment;
>   (2) an input means for receiving responses to said virtual reality environment from said human patient; and

6

>     (3) a scoring means for quantitatively analyzing said psychological, psychiatric, or medical condition of said patient;
>  (c) providing a set of encoded electronic instructions for causing said virtual reality environment to provide, on said display means, graphical representations of an environment which affects said psychological, psychiatric, or medical condition of said human patient;
>  (d) delivering said electronic instructions to said virtual reality environment; and
>  (e) instructing said human patient how and when to use said virtual reality technology unit to interact with said virtual reality environment by providing responses to said graphical representations.

Id. at 26-27.

Plaintiff bases his action for unauthorized use of the patent under § 1498(a) on several alleged direct and indirect uses by the United States through funding to third parties, including both medical treatment and non-medical use of VRIT with combat simulators.  First, plaintiff alleges generally that personnel at the Department of Defense and the Department of Veterans Affairs ("VA") medical facilities have used the inventions claimed in the patent for treatment.  Second, he alleges that the United States funded the establishment of the University of California Institute for Creative Technologies ("ICT") and, through ICT, funded the development of Full Spectrum Warrior, a virtual reality combat simulation program which uses virtual reality immersion techniques to habituate and desensitize soldiers to combat scenarios, and later funded the conversion of that program into programs such as Virtual Iraq and Virtual Afghanistan.  Third, he alleges that various organizations have performed VRIT either directly or through subcontractors, including the Defense Centers of Excellence for Psychological Health and Traumatic Brain Injury, the Defense Advanced Research Projects Agency, the Naval Postgraduate School, the United States Army Telemedicine & Advanced

7

Technology Research Center, the United States Army Training and Doctrine Command, the Pacific Telehealth & Technology Hui of the Joint Information Technology Center, ICT, the University of California–San Diego, TRICARE, and various VA hospitals and clinics. The government does not concede that these allegations are true but agrees for purposes of this motion that the court may assume the allegations to be true.

## II.     Standard of Review

Under RCFC 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). The court's task is to determine whether there exists a genuine issue of material fact for trial, and not "to weigh the evidence and determine the truth of the matter . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In ruling on a RCFC 56 motion, the court views the evidence in the light most favorable to the nonmoving party, drawing reasonable inferences in its favor. See Schooner Harbor Ventures, Inc. v. United States, 569 F.3d 1359, 1362 (Fed. Cir. 2009); Galvin v. Eli Lilly & Co., 488 F.3d 1026, 1031 (D.C. Cir. 2007). If the court finds that a rational trier of fact could not find for the nonmoving party, then there is no genuine issue for trial and the movant is entitled to summary judgment. Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita Elec. Industr. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). This case is appropriate for summary judgment, as the parties have not raised any disputes regarding material facts; instead, the court is faced solely with questions of law.

## III.    Statutory Background

This case involves the interplay of two statutes: 28 U.S.C. § 1498(a) and 35 U.S.C. § 287(c).[4] The first, 28 U.S.C. § 1498(a), dates back to June 28, 1910, and provides a cause of action against the United States for unauthorized use of a patent. In its current form, the statute provides, in relevant part:

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture. Reasonable and entire compensation shall include the owner's reasonable costs, including reasonable fees for expert witnesses and attorneys, in pursuing the action if the owner is an independent inventor, a nonprofit organization, or an entity that had no more than 500 employees at any time during the 5-year period preceding the use or manufacture of the patented invention by or for the United States. Nothwithstanding [sic] the preceding sentences, unless the action has been pending for more than 10 years from the time of filing to the time that the owner applies for such costs and fees, reasonable and entire compensation shall not include such costs and fees if the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
>
> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States. . . .

28 U.S.C. § 1498(a).

By its terms, an action under § 1498(a) against the United States for unauthorized use is similar to an action for infringement under Title 35. While parallel to each other,

---

[4] To date, there has been only one other decision interpreting § 287(c), Emtel, Inc. v. Lipidlabs, Inc., 583 F. Supp. 2d 811 (S.D. Tex. 2008). As the court in that case stated, issues involving the application of § 287(c) are rare. Id. at 814 ("This suit raises an issue rarely addressed in the case law: the application of the medical immunity provision of 35 U.S.C. § 287(c)(1).").

9

the actions are not identical. Motorola, Inc. v. United States, 729 F.2d 765, 768 (Fed. Cir. 1984) (quoting Calhoun v. United States, 453 F.2d 1385, 1391 (Ct. Cl. 1972)). In this connection, it is well-settled that the United States, in defending an action under § 1498(a), may avail itself of any defense that is available to a private party in an infringement action brought under Title 35. See id. at 729 (quoting 28 U.S.C. § 1498 (1948) (Revisor's Note)). However, the law is also clear that the United States does not benefit from every statutory limitation on liability available to private litigants in actions brought under Title 35. Id. at 769-70. Specifically, in Motorola the Federal Circuit determined that the limitations on damages set forth in §§ 287(a)-(b) do not apply to actions under § 1498(a). Id. at 766. These sections require marking of patented inventions and notice from patent holders to alleged infringers, limiting damages to the period after the alleged infringer had notice of the patent either because the product was marked or because the infringer received actual notice of infringement. Id. at 768. The Motorola court reasoned that the limitations on damages provisions in §§ 287(a)-(b) did not extend to claims brought against the United States under § 1498 on the grounds that Congress intended only for the defenses used by private litigants to be incorporated into § 1498. Id. at 769-70. The circuit based its conclusion largely on the language of the Revisor's Note to § 1498, which appeared in 1948 and stated that all "defenses" available to a private party are available to the United States. Id. The Revisor's Note states, in pertinent part:

> Provisions contained in the second proviso of section 68 of Title 35, U.S.C., 1940 ed., relating to right of the United States to any general or special defense available to defendants in patent infringement suits, were

omitted as unnecessary. In the absence of statutory restriction, any defense available to a private party is equally available to the United States.

28 U.S.C. § 1498 (1948) (Revisor's Note).

As noted above, the second statute, 35 U.S.C. § 287(c), is a medical immunity provision which was established in 1996 as part of the Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, 110 Stat. 3009 (1996). The provision was enacted in response to concerns that medical practitioners could be liable for infringement when using patented medical procedures without a license. See Emtel, Inc. v. Lipidlabs, Inc., 583 F. Supp. 2d 811, 820 & n.3 (S.D. Tex. 2008) (citing various publications). This provision provides, in relevant part:

> (1) With respect to a medical practitioner's performance of a medical activity that constitutes an infringement under section 271(a) or (b), the provisions of sections 281, 283, 284, and 285 shall not apply against the medical practitioner or against a related health care entity with respect to such medical activity.
>
> (2) For the purposes of this subsection:
>
> > (A) the term "medical activity" means the performance of a medical or surgical procedure on a body, but shall not include (i) the use of a patented machine, manufacture, or composition of matter in violation of such patent, (ii) the practice of a patented use of a composition of matter in violation of such patent, or (iii) the practice of a process in violation of a biotechnology patent.
> >
> > (B) the term "medical practitioner" means any natural person who is licensed by a State to provide the medical activity described in subsection (c)(1) or who is acting under the direction of such person in the performance of the medical activity.
> >
> > (C) the term "related health care entity" shall mean an entity with which a medical practitioner has a professional affiliation under which the medical practitioner performs the medical activity, including but not limited to a nursing home, hospital, university, medical school,

>      health maintenance organization, group medical practice, or a
>      medical clinic.
>
>   (D) the term "professional affiliation" shall mean staff privileges,
>      medical staff membership, employment or contractual relationship,
>      partnership or ownership interest, academic appointment, or other
>      affiliation under which a medical practitioner provides the medical
>      activity on behalf of, or in association with, the health care entity.

28 U.S.C. § 287(c).

## IV.   DISCUSSION

### A.   The United States May Avail Itself of the Medical Immunity Provision of § 287(c)

As noted above, there is no dispute between the parties regarding whether the alleged activities undertaken by the United States in connection with the treatment of individuals at DOD or VA medical clinics and hospitals or through subcontracts at various medical facilities identified by plaintiff fall within the ambit of the activities covered under § 287(c). Instead, the dispute between the parties centers solely on whether or not the United States may avail itself of § 287(c) as a defense to plaintiff's allegations of unauthorized use.

The government argues that § 287(c) is a defense to patent infringement allegations and is therefore incorporated into § 1498(a) by virtue of clear precedent that states that the United States my avail itself of any defense available to a private litigant in infringement litigation. This principle, as discussed above, is derived from the Reviser's note to § 1498, which expressly states that "any defense available to a private party is equally available to the United States." 28 U.S.C. § 1498 (1948) (Revisor's Note). The government distinguishes § 287(c) from §§ 287(a)-(b) and the holding in Motorola on the

grounds that § 287(c) is not a limitation on damages but is instead a defense to liability for those who meet its terms, arguing that while §§ 287(a)-(b) limit the damages that may be awarded if infringement is found, § 287(c) serves as a full bar to a lawsuit in the first instance.

In response, plaintiff argues that § 287(c) may not be used as a defense under § 1498(a) because § 287(c) is found in Title 35 and the remedial scheme established in Title 35 for patent infringements by private parties is separate and distinct from the unauthorized use provision of § 1498(a) applicable to the United States. Therefore, plaintiff argues, absent evidence that Congress expressly incorporated the § 287(c) defense into § 1498, the government cannot avail itself of the defense. The plaintiff further argues that Congressional intent cannot be inferred from the Revisor's Note to § 1498 because nowhere in the legislative history of § 287(c) is there any indication that Congress intended for § 287(c) to apply under § 1498(a).

The court agrees with the government that the defense is available to the United States in actions brought under § 1498(a). Specifically, regardless of whether § 1498(a) creates a cause of action that is separate from patent infringement under Title 35, the Federal Circuit recognized in <u>Motorola</u> that any defense available to a party in private infringement litigation is automatically available to the United States in an action under § 1498(a). See <u>Motorola</u>, 729 F.2d at 769. Thus, to the extent that § 287(c) is a defense to liability, the United States may avail itself of the defense.

Here, it is clear from both the text of the provision and the legislative history that § 287(c) is a defense and thus is available to the government under § 1498(a). A limitation

on damages prevents a plaintiff from being awarded some or all damages in certain situations, though a court may still award an injunction or enter a declaratory judgment. A defense, on the other hand, is a complete bar to any recovery or relief. The plain language of § 287(c) states that "the provisions of sections 281, 283, 284, and 285 <u>shall not apply</u> against the medical practitioner or against a related health care entity with respect to such medical activity." 35 U.S.C. § 287(c) (emphasis added). Thus, the provision immunizes the practitioner and the institutions they work for from all liability for infringement in connection with medical treatment. In contrast to the limitation on liability provisions in §§ 287(a)-(b), § 287(c) does not simply limit the liability of those individuals and institutions, but rather immunizes them from liability. In addition to preventing the recovery of any damages, § 287(c) also disallows the granting of an injunction, awards of attorneys' fees, and the overall remedy of a civil action for infringement. 35 U.S.C. § 287(c). As a result, the provision is broader than a mere limitation on damages, which only prevents some recovery of damages; under § 287(c), a qualifying entity cannot be held to have infringed. Accordingly, the court finds that § 287(c) is a defense rather than a limitation on damages.

The status of § 287(c) as a defense is confirmed by the legislative history of the provision.[5] The Conference Report states that the provision "precludes the filing of [a]

---

[5] The decision to place the medical immunity defense in § 287, which previously dealt only with the unrelated aspects of marking and notice, is not explained anywhere in the legislative history. The defense was passed as part of an appropriations bill and was not part of any larger effort to amend patent law. The bill did not amend § 287 directly, and did not include any instructions on the codification of the provision. Thus, it appears that it was simply added to the end of § 287. See Gerald J. Mossinghoff, <u>Remedies Under Patents on Medical and Surgical Procedures</u>, 78 J.

civil action for damages or injunctive relief" against a medical practitioner and others identified in the provision. H.R. Rep. No. 104-863, at 852-53 (1996) (Conf. Rep.).[6] Thus, in contrast to § 287(a)-(b), which the Motorola court noted "was never thought of as a defense," 729 F.2d at 770, § 287(c) was always thought of as a defense.

Plaintiff's contention that the United States cannot avail itself of the defense established in § 287(c) because Congress did not expressly identify § 1498 in Title 35 is without merit. It is a well-established principle that Congress is presumed to be "aware of existing law when it passes legislation." Mississippi ex rel. Hood v. AU Optronics Corp., -- U.S. --, 134 S. Ct. 736, 742 (2014) (quoting Hall v. United States, 566 U.S. --, 132 S. Ct. 1882, 1889 (2012)) (internal quotation marks omitted). Congress was well aware of § 1498 and the Revisor's Note, when § 287(c) was enacted, and thus Congress understood that express reference to specific defenses to patent infringement claims is not necessary for the government to rely on a defense available to private litigants in claims brought under § 1498(a). For this reason, it was not necessary to expressly incorporate § 287(c) into § 1498. See, e.g., Avocent Redmond Corp. v. United States, 93 Fed. Cl. 399,

---

Pat. & Trademark Off. Soc'y 789, 789-96 (1996); Leisa Talbet Peschel, Revisiting the Compromise of § 287(c), 16 Tex. Intell. Prop. L.J. 299, 306-11 (2008).

[6] The view that § 287(c) provides a defense to liability is also consistent with the only other decision to consider the provision. In Emtel, Inc. v. Lipidlabs, Inc., the court began its analysis by noting that "[s]ection 287(c) is properly understood as an immunity provision." 583 F. Supp. 2d at 818 (citing Charles Alan Wright & Charles H. Koch, Jr., 33 Federal Practice and Procedure § 8320 (3d ed. 2006)). Section 287(c) is also characterized as a "defense" in several treatises on patent law, indicating that this is a reasonable conclusion. 6 R. Carl Moy, Moy's Walker on Patents § 20:15 (4th ed. 2013); 2 Robert A. Matthews, Jr., Annotated Patent Digest § 11:228 (2014).

403 (2010) (holding that laches is available as a defense without express mention in § 1498). Thus, the government is entitled to avail itself of the defense established in § 287(c) without express reference in § 1498(a).

Because § 287(c) establishes a defense to liability and the plaintiff's allegations of unauthorized use extend to the precise circumstances addressed by § 287(c), all of plaintiff's claims of unauthorized use associated with treatment of patients for psychological, psychiatric, or medical conditions must be dismissed.

### B.     Plaintiff's Patent Does Not Extend to Non-Treatment Uses

In addition to the claims barred by § 287(c), plaintiff alleges that the United States also engaged in unauthorized use of the '764 patent by using it to develop and employ VRIT programs aimed at habituating and desensitizing soldiers. The government argues that it is entitled to summary judgment on these claims on the grounds that plaintiff's patent extends only to psychological, psychiatric, and medical treatment and evaluation of human patients using VRIT. As a result, the government argues, there can be no liability for any uses of VRIT by the United States for uses beyond the scope of the patent. Plaintiff argues that the government has mischaracterized its patent and the government's use of the patent for the purposes identified above should be characterized as "preventive medical" treatment and thus covered by the patent. This argument fails to the extent that these activities relate to medical treatment of patients with psychological, psychiatric, or medical conditions, as plaintiff argues, because the claim is then covered by § 287(c) and must be dismissed for the reasons discussed above. However, to the extent plaintiff is claiming that the development and use of VRIT for programs aimed at

16

habituating and desensitizing soldiers amounts to use of the patent in general, the court agrees with the government that the '764 patent does not cover the uses alleged by plaintiff and thus these uses do not give rise to liability under § 1498(a).

To begin, this case involves a "method" patent. "A method patent claims a number of steps; [and] under [the Supreme Court]'s case law, the patent is not infringed unless all the steps are carried out." Limelight Networks, Inc. v. Akamai Techs., Inc., -- U.S. --, 134 S. Ct. 2111, 2117 (2014) (citing Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 344 (1961)). An examination of plaintiff's patent demonstrates that the critical element in all of those steps is that the method be used to treat or evaluate a psychological, psychiatric, or other medical condition in a human patient. The first step of Claim 1 states that a VRIT user "choos[es] a psychological strategy for treating said psychological, psychiatric, or medical condition" and the second step applies that strategy to a "human patient." Appendix at 25. The first step of Claim 19 states that a VRIT user "provid[es] a plurality of sets of instructions or steps for treating said psychological, psychiatric, or medical condition" and the second step applies those instructions or steps to a "human patient." Id. at 26. The first step of Claim 23 states that a VRIT user "provid[es] a plurality of sets of counseling directions for treating said psychological, psychiatric, or medical condition and the second step applies those directions to a "human patient." Id. The second step of Claim 26 states that a VRIT user is evaluated using "a scoring means for quantitatively analyzing said psychological, psychiatric, or medical condition of said patient" and applies that analysis to a "human patient." Id. at 27. In all of these methods, the performance of the patented method

requires that VRIT be applied to a defined psychological, psychiatric, or medical condition in a human patient.

Based on the foregoing, the court concludes that plaintiff's patent does not extend to uses of VRIT beyond the treatment or evaluation of patients or individuals with existing psychological, psychiatric, or medical conditions.  As a result, any claims based on uses that do not involve the treatment in human patients of psychological, psychiatric, or medical conditions must be dismissed.

## V.     CONCLUSION

For the above-stated reasons, the court hereby **GRANTS** the government's motion for summary judgment.  The clerk is directed to enter judgment dismissing the case.  Each party to bear its own costs.

**IT IS SO ORDERED.**

      s/Nancy B. Firestone
      NANCY B. FIRESTONE
      Judge